UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES | : | 1: 25 Cr. 231 (MSN) |
| v. | : | |
| WENSHEN XU | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

## INTRODUCTION

Defendant Wenshen Xu is pending sentencing before this Court after pleading guilty without a written agreement to all three counts of the Indictment, which charge him with: (1) Conspiracy to Unlawfully Import Five Kilograms or more of cocaine into the United States; (2) Conspiracy to Commit Money Laundering; and (3) Providing Material Support to a Terrorist Organization. The defendant pled guilty because he wanted to accept responsibility for his actions but did not agree with the Government's assessment of the applicable drug and money laundering guidelines, nor that he was a leader in the charged conspiracies.

As explained in this memorandum, during the two-year window of the charged crimes, the defendant, a fifty-two year-old Chinese national, was living in Honduras where he owned a local restaurant. He was convinced by professional informants to travel to the United States, then Colombia and finally Guatemala, where he met and discussed, among other things, the relative price of cocaine in different parts of the world. In Bogota, Colombia, the informants presented him with a single kilogram brick of cocaine and then showed him what appeared to be fifty (50) additional kilograms. Despite the repeated meetings, the defendant never purchased a single gram of cocaine from the informants, nor arranged for any drugs to be sent to the United States.

The defendant did, however, personally participate in a plan initiated by the informants that resulted in the movement of $120,000.00 in alleged cocaine proceeds via cryptocurrency to a drug trafficking organization in Colombia, South America.

A large amount of the defendant's comments during the meetings with the informants – which he now regrets - were pure puffery, but as a result he now finds himself incarcerated in the United States and facing the possibility of a serious term of incarceration.

The Probation Office concluded that after grouping Counts One and Two together, the Total Adjusted Sentencing Guideline was 41. Count Three had no impact on the calculation of the guideline. The defense objected to the PSR calculation and instead believes that the defendant is responsible for no more than the value in cocaine of the $120,000.00 that was moved via cryptocurrency. During the undercover conversations, the defendant noted several times that the price of a kilogram of cocaine in Honduras was $5,000.00. Thus the $120,000.00 would have a value of twenty-five kilograms of cocaine. The defendant does not believe that a leadership adjustment applies in this case because he did not have authority over anyone else in the conspiracy and there is no evidence that anyone followed any order he might have given.

Without the leadership enhancement, the drug quantity of twenty-five kilograms results in a guideline level 32, which the defense believes should be reduced by three levels for acceptance of responsibility, two additional levels for safety valve, and two final levels for "zero point" offender, resulting in an Adjusted Offense Level of 25, which corresponds to a guideline range of 57-71 months. This is still a significant amount of time for a fifty-two year-old defendant. Even if this Court were to conclude that a higher guideline range applies, the defense respectfully requests that the Court grant a downward variance to avoid creating an unwarranted sentencing disparity between the defendant and other members of the conspiracy who pled guilty

and were sentenced in this Court for similar offenses. This memorandum includes a table which memorializes the sentences imposed in the related cases.

Wenshen Xu accepted responsibility for his criminal conduct, pled guilty and wants nothing more than to put this matter behind him, return to his family and friends and attempt rebuild the life of freedom that he forfeited by his actions. He will address the Court directly at the time of sentencing and accept responsibility for his crimes, without reservation or evasion. The defense believes that the requested term of incarceration would more than satisfy the paramount consideration that the sentence imposed be "sufficient, but no greater than necessary" to punish. Kimbrough v. United States, 552 U.S. 85, 101 (2007).

## FACTUAL BACKGROUND AND DEFENDANT'S ROLE IN THE CASE

This case arose out of a long-term Drug Enforcement Administration investigation into international drug trafficking and money laundering in Central America. The defendant was introduced to the undercover informants working for the DEA by a Chinese acquaintance. After exchanging text messages and speaking by telephone, the defendant undertook the following:

### *1. Trip To Ft. Lauderdale, Florida*

On March 24, 2024, the defendant traveled to Fort Lauderdale, Florida and met with the informants, who claimed to be cocaine traffickers. The group traveled to a local airport and toured a small plane, which the informants stated was capable of transporting two hundred kilograms of cocaine and that the plane had previously been used to deliver 100 kilograms of cocaine to Virginia. The defendant was accompanied by a friend from Portland, Oregon. The conversations were recorded and while there were discussions about drug trafficking and the price of cocaine, the defendant did offer or agree to purchase cocaine, invest in any drug shipments, or otherwise assist any drug transportation.

2. ***Trip To Bogota, Colombia***

On June 12, 2024, the defendant traveled to Bogota, Colombia, the defendant again met with the informants and was taken to a "safe house" managed by the Colombian National Police. During this meeting, the defendant was first presented with a single kilogram of cocaine and then later shown fifty (50) kilograms of cocaine in the trunk of a vehicle that were represented as purchased by someone else and was destined for the United States. The conversations were recorded on video and audio and while there were additional discussions concerning the price of cocaine, the defendant did not purchase any drugs, nor agree to conspire to do so.

*3. **Money Laundering Activity***

In September 2024, the defendant put the informants in contact with another Chinese national who used his cryptocurrency account to receive and then "launder" approximately $120,000 that was represented to be derived from the sale of cocaine. The DEA conducted surveillance in Bogota, where an unknown Hispanic male delivered the funds in Colombian pesos to an undercover officer. The defendant helped coordinate the transaction but did not receive any commission or other payment for his assistance. The defendant has been clear that he does not have any cryptocurrency accounts and only acted as an intermediary.

*3. **Trip to Guatemala***

On July 17, 2025, the defendant traveled to Guatemala City, Guatemala and again met with the informants. During the conversation at a local restaurant, the informants told the defendant that they were working for the New Generation Jalisco Cartel (CJNG) and further, that the cartel had been designated as a terrorist organization by the United States. The meetings were again recorded, and the defendant acknowledged that he was aware of the cartel is and claimed to have worked with them before. This brief conversation forms the basis for Count Three of the

Indictment. The defendant pled guilty to the charge of Providing Material Support for a Terrorist Organization because his comments during the meeting satisfy the elements of the offense. There is no independent evidence of record to establish that Wenshen Xu actually knew anything about the CJNG cartel before the informants mentioned them during the meetings. As with many of the defendant's conversations with the informants, this appears to be nothing more than self-aggrandizement. Fortunately, the guilty plea to Count Three does not alter the final guideline calculation in this case.

**THE SENTENCING GUIDELINES**

With respect to the sentencing in this case, the court begins its analysis with consideration of the relevant guideline range and then it "should" entertain arguments from the parties as to whether a non-guidelines sentence is appropriate. Rita v. United States, 551 U.S. 338, 351 (2007). In making this decision, the trial court will generally consider the sentencing factors set forth in 18 U.S.C. Section 3553(a). Kimbrough v. United States, 552 U.S. 85, 109 (2007). Without doubt the district courts have the discretion to impose a non-guideline sentence based upon their assessment of each individual case. See Gall v. United States, 552 U.S. 38, 47-48 (2007)(abuse of discretion standard applies to review of sentence outside guideline range and there is no mathematical test for reasonableness of sentence).

That analysis thus begins with the calculation of the sentence guideline in this case.

Drug Quantity

| | |
|---|---|
| Drug Quantity - 25 Kilograms of Cocaine | 32 |
| Acceptance of Responsibility | -2 |
| Timely Guity Plea | -1 |
| Safety Valve | -2 |
| Zero-Point Offender | -2 |
| | 25<br>(57-71 months) |

***Role Enhancement for Leadership***

The Probation Office concluded that a two-level upward adjustment for leadership applied in this case pursuant to U.S.S.G. Section 3B1.1(c). The defense respectfully disagrees.

The applicable guideline provides for the upward adjustment only when the defendant "was an organizer, leader, manager, or supervisor in any criminal activity." The sentencing guidelines commentary notes that:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

The caselaw interpreting the leadership enhancement makes clear that control over another participant is required. See, e,g., United States v. Vega, 826 F.3d 514, 538–39 (D.C. Cir. 2016)("there must be some evidence that he directed at least one other participant"). Moreover, "[m]ere control over a scheme rather than over a *participant* in a scheme" is not enough to warrant an aggravating role enhancement. . . . . United States of Am. v. Musa, 830 F.3d 786, 788 (8th Cir. 2016). But giving orders alone is not a sufficient indicium of leadership. The First Circuit has recently concluded that:

> when the imposition of the enhancement is based on proof of direction, our precedents make clear that there must be "proof of orders given and obeyed." . . . . .
>
> In these cases, it is not enough to prove that an order was given. Rather, in order to prove that authority and control was exercised over another participant, there must be proof by a preponderance that the order was obeyed by the other participant.

United States v. Goncalves, 123 F.4th 580, 588(1st Cir. 2024).

In this case, the defense does not believe that there is sufficient evidence to establish any of the elements identified in the commentary relating to leadership. More importantly, there is insufficient evidence to establish - even by a preponderance - that the defendant gave any orders or that any such command was followed by another participant in the conspiracy. At best, the defendant consulted with other persons – for example, the person who arranged the cryptocurrency transfer - who took actions for their own reasons and their own benefit. Thus, the leadership enhancement would not apply.

***Safety Valve and Zero-Point Offender Status***

The defense consulted with Government counsel concerning the application of the safety-valve and were advised that if the leadership enhancement does not apply, then the Government does not object to the two-level safety valve reduction. Similarly, without the leadership enhancement, the defendant is eligible pursuant to U.S.S.G. Section 4C1.1. for the two level "zero-point" offender reduction because he has no prior convictions in the United States.

**Sentencing Guideline Factors**

Once the adjusted guideline offense level has been calculated, the Court then turns to a consideration of the following statutory sentencing factors: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentencing to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment; (3) specific and general deterrence; (4) the need to provide the defendant with training, medical care, or treatment; available sentencing alternatives; (5) avoid unwarranted disparity in sentencing among similarly-situated defendants; and (6) the need to provide restitution. 18 U.S.C. § 3553(a).

The following sections address those considerations.

***Defendant's Personal Characteristics/Role In Offense***

The rules of conduct that govern the American justice system do not permit the sentencing judge in a criminal case to really "get to know" a defendant. There is no opportunity for conversation or a personal exchange between sentencing judge and defendant. In this case, the only time the Court has spoken with the defendant was during the brief questioning that accompanies a change of plea hearing, where the defendant's response was limited to "yes, your Honor."

But Wenshen Xu is more than just a criminal defendant. He is a hard-working and decent human being who is close with his family. His family moved to Honduras when he was a child and despite his limited education, worked hard and became the owner of several restaurants in San Pedro Sula, a small city near the Guatemalan border. The defendant is married and has three children with his wife Tau Ji Tan; they live in Portland, Oregon. He previously held a United States visa and traveled from Central America to visit them regularly, all the while supporting them financially. The defendant's family has written letters to the Court (which will be submitted under seal) expressing their love and support and while acknowledging that his conduct is blameworthy, asking the court for mercy in the imposition of a sentence.

The defendant acknowledged that he suffers from both drug and alcohol problems, including excessive drinking and the use of crack cocaine. The defense provided documentary evidence to the Probation Office establishing that he participated in an "in patient" treatment in Honduras in 2023. As part of the sentence, the defense requests that Wenshen be referred for drug and alcohol treatment while incarcerated.

Finally, the defendant plans to address the court personally at the time of sentencing and take full responsibility for his actions.

***Immigration Consequences Of Status As Foreign National***

The defense also believes that the sentence imposed by this Court should consider the consequences of the defendant's status as a foreign national. First, because there is an immigration detainer lodged against him, the defendant is not eligible for halfway house treatment, which would allow him to spend up to the last six months of his jail sentence under less restrictive conditions of confinement.

In addition, it is almost certain that the defendant will spend additional time incarcerated in the United States following the conclusion of his criminal sentence. After his sentence is completed, the defendant will be transferred to an immigration jail somewhere in the United States. He will be there until the Bureau of Prisons (BOP) organizes his return flight to China. The BOP ordinarily waits until there are sufficient persons to be returned to their country of origin to make the flight cost effective. Thus, there is no principled way to determine how long the defendant will remain in immigration custody until he is deported, which could take months.

The Court of Appeals has recognized that ineligibility for halfway house treatment and the additional period of incarceration pending deportation is a basis for a downward sentence variance. In United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994), the district court gave the defendant a six-month downward variance for these reasons. We ask that this Court to consider the same in this case.

***Avoiding Unnecessary Sentencing Disparity***

The federal sentencing statute specifically requires this Court to avoid sentencing disparities "among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. Section 3553(a)(6). In that regard, the defense has prepared the following

chart to summarize the sentences imposed on defendants in related cases. While a perfect comparison is not possible, these cases represent relevant sentences that the Court should consider. As will be clear from the chart, the sentences imposed were below the defendant's Adjusted Sentencing Guideline range.

| CASE NO. | DEFENDANT | GUIDLINE | SENTENCE |
|---|---|---|---|
| 19 CR. 334 | JIAYU CHEN | 108-135 MOTHS | 6O MONTHS |
| 19 CR. 334 | JING YUAN LI | 135-168 MONTHS | 84 MONTHS |
| 19 CR. 334 | TAO LIU | 121-151 MONTHS | 84 MONTHS |
| 20 CR. 15 | XUEYONG WU | 135-168 MONTHS | 60 MONTHS |
| | | | |

***Seriousness of the Offense/Promote Respect for the Law/Just Punishment***

There is no doubt that the crime for which defendant Wenshen Xu admitted his guilt is a serious matter. The defendant knows that he violated the law and has done all that is within his power to acknowledge responsibility for his actions. He entered a voluntary guilty plea in the case and has obviated the need for a trial of the charges against him.

The task of fashioning a sentence to promote respect for the law and to reflect the seriousness of the offense is in some respects an existential quest. But as at least one district court judge has noted "it is not always necessary to incarcerate a defendant to promote such respect and demonstrate the seriousness of the crime." United States v. Smith, 2009 WL 24917 (N.D. Ohio). What promotes respect for the law is a fair sentence and under the totality of the circumstances in this case, the defense believes that the requested sentence in this case is fair for

this defendant under the particular facts of his case.

***Specific and General Deterrence/Prevent Future Crimes***

The factor of specific deterrence also supports a below guidelines sentence in this case. The defendant has taken full responsibility for his conduct and promises that he will never be in this situation again. Similarly, the interests of general deterrence would be satisfied by the sentence requested by the defense. The arrest and extradition of foreign nationals – from Honduras and elsewhere - to the United States is the subject of worldwide media scrutiny and it is a matter of common knowledge that anyone involved in drug trafficking or money laundering will face have drastic consequences in the United States, or worse. No additional punishment for defendant Wenshen Xu is needed to send this message. [1]

**CONCLUSION**

The decision to impose a sentence in a criminal case is a complicated matter for the Court. Through the submission of this Memorandum, the defense has endeavored to provide the Court with relevant facts and legal arguments in support of the lowest possible sentence that the Court believes is appropriate in this case.

Respectfully submitted

/s/ Sandi S. Rhee

Sandi S. Rhee
Counsel for the Defendant
10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366

[1] The defense requests that this Court not impose an order of restitution because there is no definable group of victims. <u>See</u> 18 U.S.C. Section 3663(a). Similarly, the defense request that no fine be imposed. The defendant has no available assets to use for such payment.

SandiRheeLaw@Gmail.com
VA Bar No. 47328

Robert Feitel

_____________________________
Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Government counsel of record Edgardo Rodriguez, Assistant United States Attorney for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 22nd day of October, 2026.

/s/ Sandi S. Rhee

Sandi S. Rhee